UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LARRY CARPENTER

    Plaintiff,

vs.                             CASE NO. 8:03-CV-451-T-17-EAJ

CITY OF TAMPA

    Defendant.
_____/

## ORDER

This cause is before the Court on Defendant's Motion for Summary Judgment, filed on December 22, 2005 (Dkt. 13), and response thereto, filed January 21, 2005 (Dkt. 22).

## BACKGROUND

Plaintiff, Larry Carpenter, was employed as a Traffic Maintenance Specialist in the Public Works Department by the City of Tampa. Carpenter began work for the City of Tampa on August 1, 1996, and worked until his employment was terminated on September 11, 2002. Carpenter was a member of the Sons of Confederate Veterans. As a result of his involvement in this organization, Plaintiff chose to display a Confederate flag license plate on his Ford pickup truck.

While employed by Defendant City, Plaintiff displayed a Confederate flag license plate on the front of his personal vehicle. The truck was never used in any official capacity by the City of Tampa. Plaintiff always parked his truck in Defendant's parking lot on the corner of 12th Street and Twiggs in the downtown Tampa area. This parking lot is traditionally used by City of Tampa employees, temporary employees, and guests.

Carpenter never personally received any complaints from his coworkers that his license plate was offensive; however, Transportation Department Head Elton Smith stated that a complaint was made to Plaintiff's supervisors about the license tag. On January 24, 2002, Carpenter's immediate supervisor, Brian Eddings, verbally ordered the

removal of the license plate from the front of Carpenter's vehicle, but Plaintiff refused to comply. On January 25, 2002, Eddings asked Carpenter to sign a written account of his verbal warning to remove the Confederate flag. The meeting was not a formal hearing between Eddings and Carpenter. Plaintiff was a member of the Amalgamated Transit Union (ATU), Local Union 1464, and asked for a representative of the union to be present at the meeting. This request was denied and as a result, Plaintiff refused to sign any documentation.

On February 4, 2002, Plaintiff filed a written grievance protesting the order to remove his license plate and objecting to a lack of union representation at the informal meeting with Eddings. There is no written response to the grievance documented in evidence, but it is apparent that the order to remove his tag was not withdrawn. On February 24, 2002, Plaintiff appealed the order demanding the removal of his license plate. In response to this appeal, a grievance hearing was held on April 29, 2002, and Plaintiff's appeal was denied. The Department Head, Elton Smith, also wrote an official response to the grievance reflecting the outcome of the hearing. In the response, Smith stated that the City prohibits behavior found to be offensive or disruptive to other employees; however, the City of Tampa has no official written policy against the display of flags, signs, license plates, or other affiliations on vehicles owned by employees. Smith also told Carpenter, "If you wish to pursue your claim that the Confederate flag is not an offensive symbol and that your rights are being infringed upon, then you should continue to do so through the grievance process. However, in the interim, you should do as your supervisors have instructed and remove the flag."

Due to his failure to comply with the order, Plaintiff was repeatedly disciplined. On May 14, 2002, Plaintiff received a written reprimand. On June 11, 2002, he received negative comments on his yearly employee evaluation, only for the refusal to remove the tag. Between June and July 2002, Plaintiff was also suspended without pay on three occasions, each for a longer length of time. Plaintiff informed his superiors, Brian Eddings and Buddy Stokes, that he would not seek redress through the standard grievance procedure. In a letter sent to his immediate supervisors on July 7, 2002, Carpenter stated, "I feel that there will be no justice in the Grievance procedure as Employee relations is siding with Management." In a similar letter written July 22, 2002,

Plaintiff wrote, "I do not concur with the last three Disciplinary Actions. Management and Employee Relations have already discussed this and I feel that a grievance is not necessary as justice will not be served." Defendant terminated Plaintiff's employment on September 11, 2002.

After his termination, Plaintiff filed for unemployment benefits and was initially denied benefits. The Unemployment Compensation Claims Adjudicator found that the Plaintiff was discharged for employee misconduct. At an appeal hearing, however, the Unemployment Compensation Appeals Referee found that his refusal to remove the license plate was not misconduct and the City's order violated Plaintiff's First Amendment rights. Plaintiff then received unemployment benefits. As a result of these events, Plaintiff filed an action against the City of Tampa claiming both a violation of his First Amendment rights under 42 U.S.C. § 1983 and a violation of the Florida Constitution Article 1 Section 4.

Defendant City now moves for a summary judgment claiming that the City of Tampa does not have an official policy against the display of Confederate flags and that the order to remove the license plate was not a violation of Plaintiff's First Amendment right.

## STANDARD OF REVIEW

A federal district court will grant a summary judgment if there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56 (c). Issues of fact are genuine "only if a reasonable jury considering the evidence presented could find for the non-moving party." Anderson v. Liberty Lobby Inc., 477 U.S 242, 249 (1986). Material facts are those that would affect the outcome of the trial. Id. at 248.

Rule 56 further requires the entry of summary judgment against a party who fails to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. The moving party must state the basis for its motion, and must identify the portions of the record that show the absence of a genuine issue of material fact.

The burden can be discharged by "showing...that there is an absence of evidence to support the non-moving party's case." Celotex Corp. v. Catrett, 477 U.S 317, 323

(1986). All doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. Hayden v. First Nat'l Bank of Mt. Pleasant, 595 F. 2d 994, 996-997 (5th Cir. 1979).

## DISCUSSION

Plaintiff's display of a Confederate Flag license plate on the front of his personal vehicle is speech protected under the First Amendment. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege: (1) that a right secured by the Constitution or laws of the United States was infringed and (2) that the violation was committed by a person acting under the color of state law. Focus on the Family v. Pinellas Suncoast Transit Authority, 344 F. 3d 1263, 1276-1277 (11th Cir. 2003). Carpenter's complaint clearly meets these requirements as the relevant "speech" is clearly protected under the First Amendment and the violation was allegedly committed by the City of Tampa.

The City of Tampa argues that display of a Confederate flag on Carpenter's license plate was not protected speech. The Eleventh Circuit has established a four part test to determine whether a city has discharged a public employee in retaliation for protected speech. Morgan v. Ford, 6 F.3d 750, 754 (11th Cir. 1993); see also Rice Lamar v. City of Fort Lauderdale, 232 F.3d 836, 841 (11th Cir. 2000); Fikes v. City of Daphne, 79 F.3d 1079, 1084-1085 (11th Cir. 1996). According to the test, the court must: 1) determine if the speech addresses a matter of public concern; 2) weigh the employee's First Amendment rights against the government's interest in maintaining a productive working environment; 3) decide whether the speech played a critical role in the government's decision to terminate the employee; and 4) if the government did use the employee's speech as a reason to discharge the employee, the government then has the burden to prove by the preponderance of the evidence that it would have been reached the same decision in the absence of protected conduct. Morgan, 6 F.3d at 754.

The court must first decide whether the speech constituted a matter of public concern. Id. In Connick v. Myers, 461 U.S. 138 (1983) the Supreme Court held that speech addresses a matter of public concern when it can be "fairly considered as relating to any matter of political, social, or other concern to the community." Id. at 146. The display of a Confederate flag was a vivid symbol expressing a political and/or social idea of Carpenter. Further, in Dixon v. Coburg Dairy, Inc. 330 F. 3d 250 (4th Cir. 2003)

*vacated on other grounds* by 2004 W.L 1152827 (4th Cir. May 25, 2005) (en banc), the Fourth Circuit held that "the act of displaying a Confederate flag is plainly within the purview of the First Amendment." Id. at 262. The court went on to say that a person had "a constitutionally protected right to fly the Confederate battle flag from his home, car, or truck." Id. Thus, Carpenter's display of a Confederate flag constituted a matter of public concern and was clearly protected by the First Amendment.

Second, the court must weigh the employee's First Amendment rights against the interest of the city, as an employer, in promoting a conducive the work place. Morgan, 6 F. 3d at 754. In performing this balancing test, a court must consider: (1) whether the speech at issue impeded the government's ability to perform its duties effectively; (2) the manner, time, and place of the speech; and (3) the context in which the speech was made. Id. The City of Tampa has an interest in preventing disruptive material from permeating the work place environment. However, the City of Tampa has not proved that the display of a Confederate flag on Carpenter's license plate caused such a disruption to justify the order to remove his tag. During his entire employment for the City of Tampa, Plaintiff displayed a Confederate flag on the license plate of his truck. Until this incident, a complaint was never made about the flag. The display of the flag did not impede Carpenter's own work as he still received excellent marks on his employee evaluation sheet. Further, the time, manner, and place of speech were not disruptive to the working environment. Carpenter displayed the flag on his personal vehicle, which remained parked in the city lot for the duration of the work day. He did not speak about the flag or what he thought it represented inside the work place or during work hours. Finally, the speech was made in the context of purely personal expression and was not overtly harmful to the City of Tampa's working environment.

Third, the court must determine whether the speech in question played a substantial role in the City's decision to discharge the employee. Id. In this case, the City of Tampa cited no other reason for terminating Carpenter's employment other than the display of the Confederate flag on his pickup truck. In all other areas regarding his employment, Carpenter was an exemplary employee, which is proven by the high marks he received on his employee evaluation sheet. The only cause stated for the termination of Carpenter is his insubordination in refusing to remove the Confederate flag license

plate or parking in another area. Thus, his speech was the primary, if not the only, reason for firing Carpenter.

The last requirement of the four part test requires that if the employee can show that speech was a substantial motivating factor in the decision to terminate, the burden falls on the city to prove that it would still have reached the same decision even in the absence of protected conduct. Id. The City of Tampa has not met this burden. The City provides no other reason for the termination of Carpenter unrelated to the display of his license tag. Carpenter's employment evaluation does not reflect any cause for which he should have been fired. Further, the testimony of Carpenter's immediate supervisor suggests that Carpenter was a loyal and obedient employee. The City of Tampa had no other reason to fire Carpenter other than his refusal to remove his license plate. If this incident had not occurred, Carpenter would not have been fired.

The display of the Confederate flag on Carpenter's personal vehicle is a protected expression of speech for which he was wrongfully terminated. However, "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." Monell v. Dept. of Social Services, 436 U.S. 658, 691 (1978). A local government may not be sued under § 1983 for an injury inflicted solely by its employees. Id. Only when an injury occurs due to an execution of government policy will the local government as an entity be responsible. Id. at 694. In Sewell v. Town of Lake Hamilton, 117 F. 3d 488, the Eleventh Circuit defined a policy as "a decision that is officially adopted by the municipality," and a custom as "a practice so well settled and permanent that it takes on the force of law." Id. at 489. The official policy requirement distinguishes acts of the municipality from acts of municipal employees, and clearly limits municipal liability to actions for which the municipality is actually responsible. Pembaur v. City of Cincinnati, 475 U.S. 469, 479 (1986).

The City of Tampa does not have an official policy banning the display of Confederate flags in city parking lots. Plaintiff testified and produced documentation that other unidentified city employees also parked in the city lot and displayed Confederate flags. These employees were not reprimanded by the City of Tampa nor instructed to remove the articles from their vehicles. In fact, Plaintiff suggested as a remedy that the City of Tampa refuse to allow all symbolic representation on

automobiles parked in the city lot. Such evidence suggests that the City of Tampa does not have an official policy of banning Confederate signs and symbols from automobiles.

The Eleventh Circuit "has interpreted Monell's policy or custom requirement to preclude § 1983 municipal liability for a subordinate official's decisions when the final policymaker delegates decisionmaking discretion to the subordinate, but retains the power to review the exercise of that discretion." Scala v. City of Winter Park, 116 F. 3d 1396, 1399 (11th Cir. 1997); see also Quinn v. Monroe County, 330 F. 3d 1320, 1325-1326 (11th Cir. 2003) (holding that because the decision to terminate an employee was subject to meaningful administrative review by the Career Service Council, the County Administrator was not the official policy maker.) Because final policymaking authority does not vest in an official whose decisions are subject to meaningful review, Scala, 116 F.3d at 1401, the summary judgment will only be denied if Carpenter can show that his termination was either made by official policymakers or it was not subject to meaningful review.

The document terminating Carpenter's employment was signed by his immediate supervisor, Brian Eddings, who works as the Service Crew Supervisor. Eddings clearly is not an official policy maker of the City of Tampa. In his deposition, Eddings stated that Scott Shaw gave the directive for Eddings to discipline Carpenter. Eddings claimed that eventually Shaw ordered him to terminate his employment. Scott Shaw works as a Traffic Operations Chief for the City of Tampa. He is responsible for supervising five operating arms of the city and oversees approximately a hundred city employees. In his testimony, Shaw stated that he received support and guidance for his decision to fire Carpenter from the Department of Public Works Administration and other members of the City of Tampa Employee Relations. Elton Smith, the Department Head of Transportation, signed all disciplinary action and approved the termination. Shaw, Eddings, and Smith are primarily responsible for the termination of Carpenter's employment, as each had the authority to choose not to fire him. Although these men were the official decision makers, they were clearly not final policymakers.

The issue then turns on whether Carpenter's termination was subject to meaningful review. There is no dispute of fact that Carpenter's termination was clearly subject to review. The ATU and the City of Tampa developed an agreement outlining

the procedures by which employment disputes would be resolved. Article 6.4 of the agreement states the official grievance procedure. At step one of the procedures an employee files a grievance with his immediate supervisor, which is to be answered in five days after receipt of the written grievance. If the employee is not satisfied with the response, he can present the grievance to the Department Head who shall meet with the employee and a union representative at a hearing, unless the meeting is waived by the employee. After the hearing, the department head must write a response to the grievance. If the employee is still not satisfied, he can present another grievance to the Director of Administration who again will conduct a hearing and write a response. If employee dissatisfaction persists beyond the grievance process, the dispute can be referred to binding arbitration. Further, any termination of a city employee is subject to review by the Civil Service Board. Thus, the City of Tampa has an established procedure to review the decisions of Brian Eddings, Scott Shaw, and the members of City of Tampa Employee Relations and Public Works Administration.

Although Carpenter admits that his termination was subject to review, he claims that the review was not meaningful. Carpenter argues that the City did not follow its own official procedures for two primary reasons: failing to provide union representation at the meeting between Eddings and Carpenter, and failing to ensure that members of employee relations were present at the disciplinary hearing.

Carpenter cites the denial of his request for union representation at the initial informal meeting between Carpenter and Eddings as evidence of the City's deviance from established disciplinary guidelines. In the written response to Carpenter's grievance, Smith informed Carpenter that Employee Relations would grant union representation if a formal notice of disciplinary action or a grievance is involved, and the union representative received at least 24 hours notice of the scheduled hearing. The meeting between Carpenter and Brian Eddings in which Carpenter claims he was denied union representation was not a formal hearing. Since it did not involve official disciplinary action or a grievance, union representation is not required or even expected. The ATU should not be expected to provide a union representative for every informal meeting that a supervisor has with an employee regarding employee conduct.

Carpenter also testified that the members of Employee Relations should have appeared at the formal hearing conducted April 29, 2002, to discuss his disciplinary action because of the "open door policy" that the members espoused. He contends that their absence reflects the City's unwillingness to comply with their own disciplinary procedures. However, there is no requirement that the members of Employee Relations be present at the hearing. The second step of the standard grievance procedures require only that the Department Director, the employee, and a union representative conduct a hearing concerning the grievance.

From the evidence presented, Carpenter filed a single grievance with the City of Tampa complaining of the order to remove his license plate. It appears that Carpenter's grievance bypassed the first step of the procedure and was elevated to a level two review. Department Head Elton Smith reviewed the grievance and a hearing was conducted at which the ATU President was present. Carpenter was dissatisfied with union representation and the outcome of the hearing in which he was ordered to comply with his supervisor's instruction to remove the license plate.

Carpenter argues that the City of Tampa failed to follow the procedures and that upper officials simply "rubber stamped" the decision to terminate his employment. Carpenter contends that any review by the City of Tampa officials would not have been meaningful because Employee Relations, senior management, and the ATU would corroborate and never fairly evaluate the reasons behind his termination. Due to his feelings that the City's review policy was inadequate, Carpenter abandoned the procedure. After the step two disciplinary hearing and denial of his grievance, Carpenter could have filed additional grievances with the Director of Administration. Further, Carpenter could have sought redress through arbitration or he could of have sought review by the Civil Service Board. However, because he believed seeking such relief was "pointless," Carpenter did not bother with the standard procedures.

Carpenter was clearly dissatisfied with the grievance process and, according to the Supreme Court in Patsy v. Board of Regents of the State of Florida, 457 U.S. 496 (1982), he is not required to exhaust the city review process before filing a § 1983 claim in federal court. Id. at 502. However, unless Carpenter can provide some evidence that the administrative review was not meaningful, summary judgment should be granted.

Case 8:03-cv-00451-EAK-EAJ   Document 27   Filed 06/21/05   Page 10 of 10 PageID 200

Standing alone, Carpenter's own decision not to use the review process is not enough to prove that the review would have been inadequate. In <u>Kremer v. Chemical Const. Corp</u>, 456 U.S. 461 (1982), the Supreme Court found that an employee's choice not use the state remedies does not mean that they are inadequate. <u>Id</u>. at 485. Carpenter has not offered any other evidence to suggest that the review process would not have been meaningful other than his failure to use it. In the absence of such evidence, this Court must grant the summary judgment.

Carpenter has no evidence to show a genuine issue of material fact that the City of Tampa has an established policy against the display of Confederate flags. The officials who terminated Carpenter's employment were not official policymakers and their decisions were subject to meaningful review. In the absence of evidence tending to show the establishment of a policy or custom, the motion for summary judgment should be granted.

Having dismissed the claim arising under 42 U.S.C. § 1983, this Court declines to extend supplemental jurisdiction established in 28 U.S.C. § 1367 over the accompanying claim under the Florida Constitution Article 1 Section 4. The state law claim is dismissed without prejudice for re-filing in state court.

**ORDERED** that the Defendant's Motion for Summary Judgment (Dkt. 13) be **GRANTED**, the Clerk of Court being **DIRECTED** to enter judgment for the Defendant and close the case.

**DONE and ORDERED** in Chambers, in Tampa, Florida, on this 21st day of June, 2005.

ELIZABETH A. KOVACHEVICH
United States District Judge

Copies to: All parties and counsel of record